Thank you, Judge McKeown. Canon Chanmigam of Williams & Connolly for Appellant Federal Realty, and I'm going to try to reserve around three minutes for rebuttal. May it please the Court, in many industries, including the commercial real estate industry, preliminary agreements are routinely used as a means of directing the parties' negotiations without imposing binding contractual obligations. In California, as elsewhere, a party seeking to enforce a preliminary agreement as a binding contract is not automatically entitled to get to a jury on that issue. Instead, there are circumstances under which a court must hold that a preliminary agreement does not constitute a binding contract as a matter of law. Now, in our view, this case presents two such circumstances. First, the one-page, nine-paragraph agreement in this case is entirely silent as to the term of the lease and numerous other essential terms that one would expect to find in a contract for a complex, multimillion-dollar real estate transaction. And second, the agreement contains numerous objective indicia demonstrating that the parties did not intend to be bound, most notably language conditioning the acceptance of the stated terms upon the preparation and approval of a final formal legal agreement, even taking into account California's famously liberal parole evidence rule. Yes, which is, of course, counter to many other states. Yes, indeed, Judge McHugh. And frankly, even assuming that the statute of frauds is inapplicable here, and we do believe that the statute of frauds helps us, but even without regard to the statute of frauds, we do believe that the district court really erred here in rejecting Federal Realty's repeated motions for judgment in its favor as a matter of law on this issue. And the district court compounded that error by awarding windfall damages to First National that left it in a better position than it would have been in if the contract had been performed. And for those reasons, we believe that the judgment of the district court should be either reversed or vacated. Now, let me turn first to our arguments on liability. And I'd like to start, if I may, with our argument with regard to essential terms. The district court in this case primarily erred when it held that the final proposal constituted a binding contract, notwithstanding the absence of numerous essential terms and, most notably, the term of the lease. And there can be no doubt here that the final proposal, as the district court recognized, is entirely silent as to the term of the lease. And I'd like to turn to the language of the final proposal, which can be found at page 6 of the court. The court didn't say it was entirely silent. There were ambiguous phrases from which you might conclude the term of the lease was meant to be 10 years. Well, that's correct. And, Nicole? Well, in its initial ruling, the district court said that the term of the lease appeared to be missing. But, of course, the district court went on, ultimately, to say that the term of the lease could be implied from the option terms. But we believe that that's simply incorrect and that the analysis really should have stopped at the point that the district court said that the final proposal is entirely silent as to the term of the lease. And that's simply because even in California, with its liberal, generous parole evidence rule, California courts time and again have reaffirmed the familiar proposition that an agreement must contain all of the essential terms in order to be a binding contract and that extrinsic evidence cannot supply any missing terms. So let me, just going to the heart of it, there is no specific term, duration term in the contract. But the question, but you can also have a term implied. You can't supply it through extrinsic evidence, but you can look at the contract and it can be implied. So what is your best argument that the put and call, which have a 10-year duration, are not, in effect, the bounds of the duration of the contract? Sure. Well, we certainly don't mean to dispute the proposition that there are circumstances under which terms can be implied. I think that the California courts have actually been reasonably stringent in defining those circumstances, and they have said that terms can be implied only when they are clearly implied or when they obviously follow from other terms in the agreement. But we simply don't think that this is that sort of case, either as a conceptual matter or with regard to what actually took place in this case. And as a conceptual matter, in our view, it simply doesn't follow as a logical matter that the term of a lease must be coterminous with option terms. There are very good reasons why parties might not want to exercise their options within the specified period and might actually want a lease to continue in the event that they don't exercise those options. There's no reason why the term has to be the same. And as we state in our brief, there are very good reasons why Federal Realty might not have wanted to exercise its option to purchase the property. It may very well have been that Federal Realty wouldn't have made the improvements it anticipated to the property. It may very well be that the option exercise price was simply unattractive. But didn't Federal Realty have to exercise its option at the end of 10 years? No, not at all. And if the contract, if the intention of the parties had been that at the end of the 10 years there would have been a sale of the property regardless, the option in some sense wouldn't have been framed as an option. It would have been framed as a necessity. And so the real question in this case is what happens if neither party exercises its option? Does the party revert to First National or does the lease remain in place? And I simply think that as a logical matter, no inference can be drawn one way or the other, Judge Thompson, on that issue. Now, with specific regard to the evidence ---- Would you just go back in response to your answer, to Judge Thompson? In your view, there was no automatic purchase at the end of 10 years. Yes, that's correct. We had the option of purchasing the property and doing so at the end of the 10-year period, and that's really the implication of paragraph 3 of the final proposal. And, again, the final proposal is at page 6 of our brief, the blue brief. Now, I would like to ---- Under the liberal California rules, though, if there had been no mention of an option at the end of 10 years, your argument might be well taken. But as I understand under the California rules, if there's some indication that the parties had a term in mind, whether or not that option was exercised, 10 years was mentioned as the time within which ---- before which it couldn't be exercised, but after which it could be exercised. Isn't that true? Well, there's no doubt that 10 years is the option term. But the question here, of course, is what the lease term was. And I would respectfully submit that this is a circumstance under which the agreement by its terms is entirely silent on that issue. And the California cases, including Sterling v. Taylor, the case on which my friend, Mr. Ryan, primarily relies, could not be clearer in reiterating the proposition that extrinsic evidence cannot supply any entirely missing term. And if you look at this final proposal, the only place in which the terms of the lease are actually discussed is in paragraph 1. And paragraph 1 says in its entirety, ground lease at $100,000 per month, lease to include increases of 3 percent annually. That is where you would expect to find the lease term. And there is no dispute in this case, as this case comes to this Court, that the lease term is one of the essential terms of any lease. The California courts, since Levin v. Saroff, have said that there are three essential terms to any lease, the place that's being leased, the rent at which the lease occurs, and the duration of the lease. And any of those terms may be implied, may they not? And under extrinsic evidence, are you saying as a matter of law here, no extrinsic evidence could come in? We're saying as a matter of law that they cannot be implied unless it is just obvious that that is what the parties intended. And the case on which Mr. Ryan relies, Sterling v. Taylor, really stands only for the proposition that where there is ambiguous language in the agreement, you can look to the extrinsic evidence to determine those terms with reasonable certainty. But there is simply no language to which Mr. Ryan can point here that is ambiguous. I do want to say a word, though, Judge Nelson, about the extrinsic evidence here in the event that the Court disagrees with my first-order submission, because I do think that that extrinsic evidence really does also point in our direction. In our view, it's really telling here that in the immediate aftermath of the final proposal, the document that purported to have an implied 10-year lease term, the parties immediately swapped letters in which both parties proposed numerous additional terms. And when Federal Realty did so, it proposed a 34-year lease term, not a 10-year lease term. And in response to that, First National didn't come back and say, well, wait a minute, we agreed a 10-year lease term. Quite to the contrary, First National's own lawyer, Mr. Burt, conceded that the lease term, an essential element of the agreement, was missing and himself proposed a 50-year lease term. So we would respectfully submit that it's simply beggar's belief in this case to suggest that there was a meeting of the minds between the parties, that there was, in fact, a 10-year lease term when the parties each proposed longer terms in the immediate aftermath of the final proposal. What is the evidence as to how the 10 years was chosen? With regard to? The call in court. Well, there was some discussion that there was initially a suggestion of 5 years and then a suggestion of 10 years. But I don't know that there is any evidence in the record suggesting why this was somehow a talismanic period of time. That was just my question. I didn't see it, but, you know, there's a lot of stuff in here. Yeah. And there certainly was, and I want to be quite candid about the testimony that was before the trial court. There was some testimony from the principals of First National that, in our view, when read fairly, really suggests that the parties simply thought that it was very likely that the options would be exercised within the 10-year period. And I certainly think that that's true. But, again, I don't think that it necessarily follows that the lease term has to be 10 years as well. It could be that the parties thought that the options would likely be exercised but still need to plan for the contingency if the options wouldn't be exercised. And, again, there's no disagreement as this case comes before this Court that the lease term is essential. I do want to say something. In the record, do we find the letters mentioning 34 years and 50 years? Sure. Well, the letter proposing the 34-year lease term, it's actually in the draft ground lease, and that term can be found at pages 156 to 157 of our excerpts of record. And the Burtt letter, which lists some 69 additional important business issues, proposes the 50-year initial term of lease at page 294 of our excerpts of record. Would you go to the damages issue as well? Sure. I'd be glad to. And if I may, let me just say one last thing on liability. I do think that the parties' subsequent course of conduct is important here, because not only do you have the parties swapping letters in which they're proposing numerous additional terms, but you have First National actually proposing, in the immediate aftermath of the final proposal, to delete two of the terms of the final proposal, and that's at page 221 of the excerpts of record, and then shortly thereafter raising the possibility of dispensing with the final proposal altogether and negotiating an outright sale of the property instead. And for the following year, the parties are negotiating a potential sale of the property, and First National never unambiguously comes forward and says, wait, we've already got a binding contract. And I would submit that it is wholly implausible for a party to proceed in that fashion and then turn around at the end of the two-year period and bring suit to enforce a preliminary agreement. On the damages issue, Judge McKeown, the district court's damages award, in our view, is plainly excessive for the simple reason that it is based on conflicting premises. The district court awarded damages for the value of the option as if it had been immediately exercised, but also awarded damages for lost rent as if the option had not been immediately exercised. And we simply don't think that those two components of the damages award can stand together. Here is my question, that this whole issue of the valuation of the option had kind of a tortured history, starting with the motion in limine, and so therefore you can't speculate. Therefore, First National can't put on that testimony at trial, and yet there is testimony at trial that a rational economic actor would have exercised it at the end of the period. Correct? And that came in without objection. It came in without a specific objection, though I think in a more general sense we made clear that we didn't think that the district court could award both parts of the damages award that it ultimately did. Would you agree that you could award all of the rent but assign some value to the option? I'm not asking you which value, but a value, that an option like this has some value that appropriately discounted and run out over a period of time could come up with a value? As a conceptual matter, that's absolutely true, Judge McKeown. In this case, and that was really litigated as the so-called extrinsic value of the option, and the district court, of course, ultimately concluded that First National had failed to present evidence of that extrinsic value and the extrinsic value should therefore be zero. And our submission in terms of what the court should do with this conflicting damages award is based simply on the proposition that First National had the opportunity below to come forward with evidence as to when it would have exercised its option. But in discovery, First National conceded that it could not identify when it would exercise the option. And it is, of course, First National's burden to establish damages with reasonable certainty. And having failed to do so, we moved in limine to exclude any evidence on that issue. The district court ended up ultimately effectively granting that motion by determining the value of the option as of the initial date of the lease. Where the district court went astray was on tacking on lease damages as well. We would have no objection if the court affirms on liability to leaving the lease damages in place, but we simply don't think that First National ought to be entitled to a second bite at the apple in presenting evidence on when the option would have been exercised. And I will reserve the balance of my time. Thank you. Roberts. Good morning, Your Honors. Pleasure and honor to be before you this morning. Good morning. I'm here with my colleague, David Loehrst, and Krista Enns. I'd like to address what my esteemed colleague talked about first. He said that Judge White should have stopped when he didn't see an explicit duration on the face of the document. He should have stopped. That is what they've argued in their briefs. Judge White, as a matter of law, could not stop. PG&E says he cannot stop if one of the parties offers extrinsic evidence to expose an ambiguity in a document that appears to be clear on its face. Do you equate a missing term with ambiguity? Do I equate? I do not equate a missing term with ambiguity. Because would you agree that on its face there is no duration term in the document? On its face. Least duration term. On its face, it does not contain something that explicitly says what the duration is. Okay. And Judge White said, looking at the face of the document, I don't see something that says the least is 10 years. But what I do see is text in the document that may express a duration, express a duration in light of the extrinsic evidence. That's what Judge White said. That's a key distinction. And what he said in his orders is that as long as the text, there's a foothold, there's a basis in the text from which the extrinsic evidence relates, that is sufficient. And he relied on PG&E in doing so. So let's talk about what their claim of error is. It's very clear that Judge White was not allowed to consider the extrinsic evidence. That is their sole claim of error. They have not attacked his finding of reasonable susceptibility in light of the extrinsic evidence. They have not attacked that finding. He said he should have stopped. As a matter of law, he could not stop. Therefore, their appeal on the face of the document argument must be denied. Because as a matter of law, he had to continue. Mr. Ryan, I want you to help me clear up how I got a little off key here on thinking that this option to put a call on the property by First National would be exercised at the end of 10 years. Now, after 10 years, if it's not exercised, the option is gone. Isn't that right? Yes, Your Honor. Judge Thompson, would you like me to explain the testimony on this point? Well, just a moment. Now, First Realty or Federal Realty was going to build a building or buildings with $35 million worth of value or something like that? They were going to build a multimillion-dollar parking structure with luxury condominiums on top of it. Yes. How much was all that going to? The evidence was tens of millions of dollars. How much?  Tens of millions of dollars. Now, at the end of 10 years, they paid $100,000 a month in rent. And if they don't exercise the option, then they just walk away from that whole investment. Is that right? There would be a reversion back to the lessor. And the testimony from Mr. Gutman, the CEO, was I intend to exercise the call. I call it my insurance policy. If First National doesn't exercise its put, because I can't afford to have it revert back. Well, that's what I was thinking. So that's the compelling force of saying at the end of 10 years, it's going to be exercised. That's right. Mr. Gutman said that to Mr. Dryan and Mr. Rubenstein. I will exercise the call as my insurance policy if you do not exercise the put, because I'm going to invest tens of millions of dollars in that property. But as a legal matter, he recognized if he didn't exercise the call. It would go back to the lessor. Yes. There would be a reversion back. That was the evidence. And that part of the evidence was actually undisputed, Your Honor. Okay. The other thing that I'd like to address is this idea that somehow Your Honor should look at some post-contractual proposals and documents and a statement by Mr. Burt, who wasn't even involved in the negotiations, and then say it's a matter of law. The jury got it wrong. Well, that's what they're arguing. This is a substantial evidence test, Your Honor. And as you well know, Your Honors are not sitting in the place of the jury. And they had all of these documents in front of them. Mr. Burt testified live an entire half day and said, I wasn't involved in these negotiations. I never talked to Mr. Dryan and Mr. Rubenstein about what was said at these meetings. And if we go back to what Judge White was looking at, the evidence was this, that Mr. Guttman proposed the idea of a put-and-call option, explained to him how it would work, and they said the put-and-call options will define the duration of the lease. Those were the words that were spoken. That's an objective manifestation of intent, that the language in the document would state a duration. We're in the record where we find that particular thing. Supplemental excerpts of record, page 1054. 254? 1054, Your Honor. Thank you. Thank you, Judge Nelson. Thank you. So we have that. We have ---- I want to compare that with the letters that followed dealing with 34 years and 50 years. What do you respond to that? Well, there was tremendous testimony from Mr. Dryan and Mr. Rubenstein about all of that. And what Mr. Dryan said is they were proposing a whole new deal. We were talking about a new deal. We could have done a new deal that superseded the old one. The fact that we were talking about a different deal has nothing to do with the intent of the parties on August 25th, 2000, when the final proposal was executed. What matters is what the state of mind, the objective manifestation of intent was on that date, not that they later decided that they were going to try and do a new deal. And you had a question about why the 10 years. Well, the evidence was Mr. Dryan and Mr. Rubenstein wanted to get their long-time employees to retirement. And that's why they wanted 10 years stream of income, because that was the best way they could do it. They had a lot of employees that had worked there between 15 and 25 years. That's how the 10 years came about. Okay? And that's what the testimony says. That's what the testimony says, to get our employees through to retirement. That was the evidence. So what I'd like to do is turn now to what First National had on the day of the breach before there was repudiation, because I think this is really important. My esteemed colleague has said that First National has been put in a better position than if there had been full performance. That's what they said. And that's just not true. They don't cite the record for that. They don't cite any calculations for that. The record doesn't support that statement at all. What Mr. Dryan and Mr. Rubenstein had on the day of the breach was a document, a financial instrument, that said they were entitled to an escalating stream of rental income for up to 10 years. And it went up every year on a 3 percent basis. They also had the option to force Frit to purchase the property, to put the property to Frit, at an escalating price every year, no matter what happened, no matter what happened with the economy. And I can get the site for you. Mr. Gutman said to them when they were negotiating this, I know I'm paying an inflated price for this, but my trustees and I have to have this property. We have to have it now. We need an enforceable contract now. Pages 14, 15 to 14, 17 of the supplemental excerpts of the record. It's an enforceable contract now that we have to have. And I'm going to pay this inflated price. And how is this going to benefit you? Mike and Hal, this is what you're going to have. You're going to get above market rents for up to 10 years. And you can wait it out. And you can see when the worst moment in the economy happens, kind of like now. And you can exercise that put option and make us buy that property at an inflated price. And that's how we sold it to them. Because, frankly, Hal and Mike weren't interested in doing a deal at the time. We're going to make you an offer you can't refuse. It's going to be an amazing offer. It was an amazing offer. It was an incredible financial instrument that our accountant said, without contradiction, represented an almost guaranteed 12 percent rate of return over 10 years, an incredibly valuable financial interest. At the end of the 10 years, the option strike price, $17.4 million. Because it goes up every year at an inflated price. Think about exercising it tomorrow. That might not be such a bad thing. The point was First National had the choice. It can get 10 years of lease payments if it wants it. And it can wait until the end of 10 years. Well, let's, okay, let's get to the evidence, which is this is where things break down for me and why I have some confusion. Because when you were asked about when you might, when you would have exercised it, you said, well, that would call for speculation. You didn't say economically that although we can't give a precise date, we would normally have, we would exercise at least at the end of the term because of, you know, rational economic actor. So you didn't say that. And so basically there was no valuation of this in terms of evidence at the trial. And that's where I'm having some trouble. Maybe you can help me out. I'm so glad you asked that, Judge Braccio. Because I feel like it's Yogi Berra, it's deja vu all over again, only it's in reverse for me. Because what's happening is I'm hearing my own arguments raised back to me, but the other side is arguing them when they argue the exact opposite below. Well, they've argued in their briefs that in order to value an option, the court was required to determine when we would have exercised it. But in the motions in lemonade stage for the measure of damages, which was in the summer of 2005, in fact, it was Fritz Counsel called up and said, we want to establish how we're going to calculate damages before there's a jury trial. We want to get it out of the way. We want to determine it. So at page 1622 of the supplemental record, there was a stipulation in order. And Fritz says, the way we think damages released should be calculated is under civil code 1951.2. No mention about it getting cut off if the put is determined to be exercised. And then they said, we want the court to follow the second and third circuits in Lucin and Scully and value the option on the date of the breach without regard to when the option would have been exercised. They said Lucin and Scully, the second and third circuits, they have it right. First National has it wrong. Because what I argued was, I said to Judge White, why don't we just have the trier fact determine when we would exercise the option. We'll value the option on that date, and we'll cut off lease damages on that date. We're willing to take that chance. And Fritz counsel comes in and says, no, no, no, no, no. This business about when the option would have been exercised, that's irrelevant. Because the Lucin and Scully cases say you don't need to take that into account. You just value the option on the date of the breach because it's the way breach of contract damages are measured. You go to the date of the breach. And, you know, Judge White said to me, and he explained to me why he picked that measure of damages. And I saw the wisdom in what he said. I assume he didn't explain just to you. No. No, I was there. You were there. Everybody was there. Right. Yeah, yeah. I was at a hearing, yeah. And because I was arguing for a different measure, and he said, I don't want to deal with trying to have experts figure out what the value of the property is in eight, nine, ten years. And I don't want to get into a bunch of testimony about what ifs and that sort of thing. This Lucin and Scully, their methodology gets rid of all that because the other problem with doing it the way that I was suggesting is it allows for hindsight. And that's what Lucin and Scully talked about. They don't want somebody coming in and going back in time and saying, oh, the date that the stock market was the best for me, I'm going to say that's when I would have exercised. So back on September 12th, 2005, Judge White said, Frit, I agree with you. We're not going to take into account when the option would have been exercised. And you're right, any testimony about when it would have been exercised, it is not relevant to this damage model that I'm employing at your request. And then years later, we get to the damages trial, okay? And now Frit comes up with this idea that First National is required to choose between option and lease damages. And we said to Judge White, that's not fair. We had two things that we bargained for. And the United States Supreme Court case says, it appears in Brown v. Horst, 1899 and 1900 respectively, that when there's an anticipatory breach, the non-breaching party is entitled to the full benefit of their bargain, down to the time of complete performance. And the notion that because there's an anticipatory breach, the non-breaching party has to choose part of its remedy, part of its rights under the document. And then Judge White says to Frit's counsel, don't you think it's just a matter of common sense that a contract with a lease and an option is more valuable than just a lease? And Frit's counsel said, yes, Your Honor, I do. But what Frit would have this court do is say, because they exercised, because they repudiated, First National has to strip out part of its bargain because it chose to treat it as a total breach. That's just not the law, Your Honor. And it's not just. And, moreover, it would create an incentive for breaching. And that's what Judge White recognized. If you allow people to remove benefits from documents by repudiating them, you're incentivizing breaching. And that is not the law. Thank you very much. Thank you. Would you begin where you ended, and that's with the statement that on September 12, 2005, that basically the Court agreed with Frit that you would go with the Second and Third Circuit, the Scully-Lucent approach, and that is the valuation at the outset. Yes. We made the argument below, Judge McKeown, that the district court should either treat the anticipatory breach as the immediate exercise of the option or, at a minimum, require First National to elect between the two different types of damages. But the district court rejected that argument and ultimately decided to award both damages for the value of the option and damages for lost rent based on inconsistent premises. And it could not have been clearer that we objected to that ruling. We objected to it in our trial brief at page 28 of the supplemental excerpts of record. And then when the district court issued a tentative ruling on damages that basically correlated with its final ruling at docket 696 at pages 4 to 6, we said you can't award damages based on these conflicting premises. So I just think that it's elusively clear that we raised precisely the same objection to the damages award. Well, there's kind of two different damage questions. One is you said they had to elect. And the district court said, well, no, they didn't really have to elect because they had both things to begin with and they might have gotten the benefit of the bargain on both. So they don't have to elect. And you said, well, we disagree, right? Yeah. Well, we certainly made the argument below that they have to elect. And we're not pursuing that argument before this Court. We're making the much ---- Then your second argument is, well, if they don't have to elect, just to make sure I have this right, if they don't have to elect, then they have to have some evidence. And that evidence, in your view, can't be back to the scully lucent approach. Yes. They have to come forward with some evidence from which the value of the option can be reasonably ascertained. And the whole basis of our motion in Lemonet was that in light of their concession that they could not do so, that they ought to be precluded from presenting evidence either as to when they would have exercised the option themselves or when a rational actor would have done so. And as a practical matter, the district court, by setting the value of the option as of the initial date of the lease, really pre-permitted that inquiry at trial. Let me say just one thing. So let me just go back then. I think the scully lucent are a little bit different, because that's not an election of remedies so much as evaluation of options. Right. That's really evaluation. Those are really cases of ---- Cases of how do you value. Okay. Right. That's right. Let me just say one thing on liability, and then I'll sit down. You know, Mr. Ryan, right at the outset of his argument, conceded that the lease term is not present on the face of the preliminary agreement here. And that is silenced by any measure. It isn't ambiguity. And Judge McEwen, there is a difference between the two even in California. And the best evidence for that is a PG&E case, the case that is really the landmark case on what to do when there's ambiguity, which says, and I quote, extrinsic evidence is not admissible to add to the terms of a written contract. And that's at 69 Cal Second 39. And that is the proposition that, in our view, mandates a ruling as a matter of law in our favor on liability. And, Judge Nelson, just to add one final point on your question about whether the essential terms can simply be added by extrinsic evidence, whether on a theory of implication or otherwise, the practical implication of this Court accepting that theory would be to say that whenever a party seeking to enforce a preliminary agreement comes forward with extrinsic evidence, that party can automatically get to the jury on that question. That would entirely vitiate the purpose of preliminary agreements, as this Court explained in the Rennick case, which is to provide parties with a means of guiding their negotiations without running the risk of being exposed to binding obligations. And even in California, it is simply not the law that a party is entitled to get to the jury under any circumstance, and we would respectfully submit that this is the paradigmatic case in which judgment as a matter of law is warranted. Thank you. Thank you. Case First National Mortgage v. Federal Realty is submitted. I do want to thank both counsel. These were excellent arguments. And also, we really appreciate your knowledge of the record. It's extremely helpful, and the Court thanks you.
judges: Nelson D. W., Thompson, McKeown